IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| REX WILLIAM MARTIN, | § § § | |
| Plaintiff, | § § | |
| vs. | § § § | Civil Action No. 1:12-CV-062-BL <br> ECF |
| CAROLYN W. COLVIN,[1] <br> Acting Commissioner of Social Security, | § § § § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed April 16, 2012, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (Doc. 1). Plaintiff filed a brief in support of his complaint on August 30, 2012 (Doc. 178). Defendant filed a brief on September 27, 2012 (Doc. 19). The parties consented to having the United States magistrate judge conduct all further proceedings in this case April 16, 2012 (Doc. 6) and on June 17, 2013 (Doc. 22). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security, effective February 14, 2013, and is therefore substituted as Defendant in this matter for Michael J. Astrue, per FED. R. CIV. P. 25(d)(1).

## I. STATEMENT OF THE CASE

Plaintiff filed an application for disability and disability insurance benefits and supplemental security income on March 13, 2009, alleging disability beginning May 1, 2005. Tr. 17, 103-118. Plaintiff's application was denied initially and upon reconsideration. Tr. 60-65, 69-72. Plaintiff filed a Request for Hearing by Administrative Law Judge on June 17, 2010, and this case came for hearing before the Administrative Law Judge ("ALJ") on October 31, 2010. Tr. 32-53.

Plaintiff appeared and testified in his own behalf. Tr. 34-47, 50-51. A vocational expert ("VE") appeared and provided expert testimony. Tr. 47-50. The ALJ issued an opinion that was unfavorable to Plaintiff on October 4, 2010. Tr. 17-30.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. The ALJ found that Plaintiff met the insured status requirements through June 30, 2010. Tr. 17. The ALJ further found that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date. Tr. 19. The ALJ found that Plaintiff has "severe" impairments, including degenerative changes of the lumbar spine, diabetes mellitus, and obesity. *Id.* The ALJ found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, Tr. 20. The ALJ specifically addressed Sections 1.00, 1.04, and 9.08 of the Listings. *Id.*

The ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy. The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.

Tr. 20-21. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms and the limitations imposed therein, as contained in Plaintiff's subjective reports and testimony. *Id.*

The ALJ discussed Plaintiff's reports of his symptoms and the medical treatment he received. Tr. 21-23. The ALJ noted Plaintiff's testimony as to his pain, medical treatment, his activities, and as to his limitations. Tr. 21. The ALJ noted that Plaintiff was primarily treated through the West Texas Veterans Affairs ("VA") Clinic. Tr. 22. The ALJ compared Plaintiff's subjective allegations with objective evidence of record, and particularly addressed Plaintiff's allegations of disabling pain.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments, the symptoms experienced therein, and the intensity, persistence, and limiting effects of his pain were not consistent with or well supported by the objective medical evidence. Tr. 11. The ALJ addressed Plaintiff's symptoms and treatment for his back pain from 2005 through the time of the hearing. Tr. 22. The ALJ noted that Plaintiff underwent a CAT scan and a stress test, attempted physical therapy, was give a TENS unit to treat his pain, and required emergency room treatment after avoiding insulin. Tr. 22. The ALJ also noted that although VA treatment providers opined that Plaintiff should not lift more than 10 pounds, Plaintiff's testimony indicated no difficulties in activities of daily living. Tr. 23.

The ALJ also discussed the consultative examination by Dr. Daggubati, the results of x-rays and an MRI, and Plaintiff's reports of pain. *Id.* The ALJ noted Plaintiff's reports of pain managed by medication, as reflected in the medical evidence of record. Tr. 24. The ALJ addressed Plaintiff's treatment for diabetes mellitus and his obesity as well. Tr. 23-24. The ALJ found Plaintiff's complaints of pain not credible insofar as they are inconsistent with the RFC determination. *Id.*

The ALJ found that Plaintiff retained the residual functional capacity to perform the physical and nonexertional requirements of a range of sedentary work, having the ability to lift and carry 10 pounds occasionally and frequently; stand and/or walk for at least two hours during an 8-hour workday; sit for six hours during an 8-hour workday; with the opportunity to alternate between sitting and sanding to relieve pain or discomfort. The ALJ found that Plaintiff was additionally limited insofar as he can only occasionally balance, crouch, and climb ramps or stairs; cannot kneel, crawl, stoop, perform overhead reaching; cannot climb ladders, ropes, or scaffolds; and cannot work around hazardous moving machinery or unprotected heights. Tr. 20. The ALJ found that Plaintiff has no visual or communicative limitations. *Id.* In making this RFC determination, the ALJ noted that he had considered the findings and opinions of the State agency medical consultants, but found Plaintiff limited to sedentary rather than light exertional work. Tr. 24.

The ALJ found that Plaintiff could not perform any of his past relevant work. Tr. 25. The ALJ noted that Plaintiff was a "younger individual" on his alleged onset date with a high school education and the ability to communicate in English. Tr. 25. The ALJ found that transferability of skills was not material to a determination of disability. *Id.*

The ALJ relied upon the testimony of the vocational expert, who indicated that a person of the Plaintiff's age, education, past relevant work experience, and residual functional capacity could perform work which exists in the national economy, including the jobs of food/beverage order clerk, bench hand, and document preparer for microfilm. Tr. 26. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id.*

Plaintiff sought review of the hearing decision and order. Tr. 12. The Appeals Council denied Plaintiff's request on February 17, 2012, indicating that although it had considered the

contentions and the additional evidence submitted by Plaintiff, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-10. The ALJ's decision, therefore, became the final decision of the Commissioner.

On April 16, 2012, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton*, 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to other work which exists in significant numbers in the national economy. Tr. 26.

### III. DISCUSSION

Plaintiff claims that the ALJ erred by failing to find that Plaintiff's severe impairments met or were equivalent in severity to a section of the Listing of Impairments, thereby establishing presumptive disability. Plaintiff specifically argues that his medically determinable severe impairments met the criteria of Section 1.04A of the Listings, dealing with disorders of the spine. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen,* 810 F.2d 1296, 1301 (5th Cir. 1987). A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986).

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as to be the basis of eligibility under the law, the ALJ is required to consider the

combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *See* 20 C.F.R. § 404.1523. *Loza*, 219 F.3d at 393. If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.*

The ALJ indicated in his opinion that he had considered the combined effect that Plaintiff's severe and nonsevere impairments had on his ability to perform work related activity and in determining whether such impairments met or equaled in severity any section of the Listing of Impairments.

Section 1.04 A of the Listing of Impairments requires that the Plaintiff show:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*See* 20 C.F.R. Part 4, Subpt. P, App. 1, §1.04 A. Plaintiff argues that the medical record demonstrates that he has a disorder of the spine – degenerative changes in the lumbar spine, consistent with the ALJ severity determination. Plaintiff argues that such changes include posterior disc herniation and narrowing of the disc and L5-S1, which, considered in combination with his other severe impairments, are equal in severity Section 1.04 of the Listing of Impairments, thereby demonstrating that he is presumptively disabled.

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3, the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals the listings. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory

findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart*, 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders*, 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders*, 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The record demonstrates that although Plaintiff complained of pain from his back to his legs, Dr. Daggubati, the consultative medical examiner, noted that Plaintiff's deep tendon reflexes were within normal limits, there was no clubbing or edema of the extremities, and he exhibited no neurological deficits. Tr. 527-28. Dr. Daggubati noted a mild limitation of range of motion in the back, and positive straight leg raising at 60 degrees on both side with knees straight. Tr.527. Dr. Mehta also noted a decreased range of motion of the back. Tr. 559, 583, 613.

However, Plaintiff failed to identify medical evidence of motor loss accompanied by sensory or reflex loss, nor does he demonstrate positive straight-leg raising testing, both sitting and supine. Section 1.00 E (1) explains that inability to walk on the heels or toes, to squat, or to arise from the squatting position may, as appropriate, constitute evidence of significant motor loss. Plaintiff cites to the report of a physical therapist who indicated that Plaintiff reported weakness and decreased strength. Tr. 209-10. Dr. Daggubati noted that Plaintiff could heel and toe walk, and that his squatting was limited by degenerative arthritis of the knees. Tr. 528. The therapist is not an acceptable medical source as defined by 20 C.F.R. § 404.1513 (a). Moreover, the Plaintiff's report of weakness does not constitute medical evidence of motor loss. 20 C.F.R. Pt. 404, Subpt. P, App.

1, § 1.00 D ("These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation). In addition, although Plaintiff was noted to experience peripheral neuropathy, Dr. Daggubati found no reflex loss and did not indicate positive straight-leg raising tests both sitting and supine. Although Plaintiff correctly notes that Dr. Mehta reported positive straight-leg raising tests, the medical evidence of record does not indicate postive tests, both sitting and supine. Section 1.00 D explains that "[a]lternative testing methods should be used to verify the abnormal findings; e.g., a seated straight-leg raising test in addition to a supine straight-leg raising test." *Id*. The lack of positive straight-leg raising tests in both the supine and sitting positions demonstrates that the Plaintiff has failed to provide and identify medical signs and findings that support *all* criteria of Section 1.04 of the Listing of Impairments.

The record demonstrates that the Plaintiff has failed to provide and identify medical signs and laboratory findings that support *all* of the criteria required to meet Section 1.04 of the Listing of Impairments. Therefore, the ALJ did not err in finding that Plaintiff's combined impairments did not meet or equal in severity Section 1.04, or any other section, of the Listing of Impairments. The court further finds that the ALJ decision is supported by substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that the Commissioner's decision is supported by substantial evidence in the record and should be affirmed, that Plaintiff's complaint should be **DISMISSED WITH PREJUDICE**, and that judgment should be entered in favor of the Defendant.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed April 16, 2012 (Doc. 1), is **DISMISSED WITH PREJUDICE**.

A judgment in accordance with this Memorandum Opinion and Order shall be entered accordingly.

**SO ORDERED.**

DATED this 21st day of June 2013.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**